# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lance Phillip Wickner,

        Plaintiff,

v.

Nanette Larson, Jessica Symmes, Kent
Grandlienard, Peter Puffer, Lcie
Stevenson, Mike Green, and
Lieutenant Tobritzhofer, all sued in their
individual capacities,

        Defendants.

Civ. No. 09-940 (DWF/JJK)

**(REDACTED) REPORT AND
RECOMMENDATION**

Lance Phillip Wickner, 204147 MCF-OPH, 5329 Osgood Ave. N., Stillwater, MN
55082-1117, *pro se* Plaintiff.

Margaret E. Jacot, Esq., Minnesota Attorney General's Office, counsel for
Defendants.

## INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Preliminary

Injunction (Doc. No. 13 ("Pl's Mot.")). Specifically, Plaintiff asks the Court to

order Defendants Nanette Larson, Jessica Symmes, Kent Grandlienard, Lcie

Stevenson, and Peter Puffer (hereinafter "Defendants") to "reinstate [P]laintiff

Wickner's Mental Health Treatment Plan." (*Id.*) The case has been referred to

this Court for a Report and Recommendation under 28 U.S.C. § 636 and

D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that

Plaintiff's motion be denied.

SCANNED

OCT 2 8 2009

U.S. DISTRICT COURT ST. PAUL

## BACKGROUND

Plaintiff has been in the custody of the Department of Corrections since March 2001. He is currently incarcerated at the Minnesota Correctional Facility at Oak Park Heights ("MCF-OPH"), and he has been incarcerated there since August 2002. MCF-OPH has two segregation units where offenders serve disciplinary segregation sentences—Complex 5 and the Administrative Control Unit ("ACU"). Plaintiff has "received many numerious [sic] disciplinary Reports for sexual misconduct for exposing himself to female Guards and nurses[,]" and as a result, he has served segregation sentences in both the ACU and Complex 5. (Doc. No. 18, Am. Compl. at 8, ¶¶ 54, 55.) Plaintiff is currently housed in the ACU, and his segregation sentence extends to August 19, 2011, his sentence-expiration date. (*Id.* ¶¶ 56, 57.)

Throughout Plaintiff's incarceration at MCF-OPH, he [ REDACTED

REDACTED

REDACTED

REDACTED                                  ] (Doc. No. 29, Aff. of Peter Puffer ("Puffer

Aff.") ¶ 11.)[1]  [ REDACTED

---

[1]     Defendants filed this affidavit under seal. Plaintiff has not filed any information or filings under seal relating to his mental-health claims. Out of an abundance of caution, this Court has preserved the confidentiality of this affidavit, and has filed a sealed, unredacted version of this Report and Recommendation,
(Footnote Continued on Next Page)

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED                                    ]  (*Id.* ¶ 13.)  According to the

treatment plan, Plaintiff "would be afforded opportunities to live as any general

population offender, however his segregation time would essentially be 'stayed'."

(Doc. No. 14, Aff. in Supp. of Mot. for a Prelim. Inj. ("Pl.'s Aff.") ¶ 9, Attach. at 1.)

However, Plaintiff would be "expected to remain discipline free." (*Id.*)  The

treatment plan also stated that:

> Behavior resulting in a **formal incident report** will result in a return
> to the segregation unit.  [Plaintiff] is expected to serve the
> segregation time associated with any new infraction before a
> resumption of a plan will be considered.

(*Id.*)

The treatment plan stated that the reason for Plaintiff's referral to a sex-

offender program at another facility was because of Plaintiff's interest in

participating in sex-offender treatment and because the "vast majority of

---

(Footnote Continued from Previous Page)
and also an unsealed, redacted version of this Report and Recommendation.

[Plaintiff's] segregation time [was] the result of 'Sexual Behavior[.]'" (*Id.*) The treatment plan nonetheless stated that "[o]pportunities to participate in services offered in the Mental Health Unit [at MCF-OPH] may be made available while living in Complex 1; these could include education, industry and possibly therapy groups." (*Id.*)

Defendant Puffer, the Psychological Services Director for the MCF-OPH, supervises mental-health staff and provides care and treatment to offenders there. He explains in an affidavit how Plaintiff's treatment plan was administered:

[  REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED                                        ]

(*Id.* ¶ 14.)

Puffer testified in his affidavit [  REDACTED

REDACTED

REDACTED

REDACTED                              ] (*Id.* ¶ 11.)   He also testified that

[  REDACTED

4

REDACTED                                          ] (*Id.* ¶ 12.) In

addition, Puffer opines [   REDACTED

REDACTED                                          ] (*Id.* ¶ 9-12.)

On April 23, 2009, Plaintiff filed suit against Defendants alleging violations

of his civil rights under 42 U.S.C. § 1983. He alleges that various conditions of

his confinement violate the First, Eighth, and Fourteenth Amendments to the

Constitution. Relevant here, Plaintiff alleges that MCF-OPH is providing him with

inadequate mental-heath care. Specifically, he claims that:

> The conditions of confinement in Complex-5 and Administrative
> Control Unit in Oak Park Heights which include deprivation and lack
> of basic Mental Health Programing [sic], lack of privacy to talk to
> Mental Health Staff, mark [sic] by extreme social isolation and
> reduced environmental stimulation, combined with eight years length
> of deprivation constitutes ongoing violations of Eighth Amendment's
> prohibition against cruel and unusual punishment.

(Doc. No. 18, Am. Comp. at 16, ¶ 1.) On September 1, 2009, Plaintiff filed the

preliminary-injunction motion at issue here, specifically seeking an order that

would require Defendants to reinstate the 2007 treatment plan.[2]

---

[2]     In his Reply, Plaintiff asserts that in his motion for preliminary injunction, he
was requesting relief from all of the conditions of confinement complained of in
his Amended Complaint, not just the inadequate mental-health element. This
Court concludes that no reading of Plaintiff's motion for preliminary injunction
could possibly be interpreted that broadly; thus, this Court limits its analysis to
the relief requested in Plaintiff's motion, which was to "reinstate plaintiff Wickner's
Mental Health Treatment Plan." (Pl.'s Mot.)

## DISCUSSION

## I.   Standard of Review

The separation of powers requires that courts must exercise "judicial restraint" in response to complaints regarding the operation of prisons by executive and legislative branches. *See Turner v. Safley*, 482 U.S. 78, 84-85 (1987). This reluctance is particularly pronounced where a state prisoner seeks relief in federal court. *Id.* at 85 ("Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities."); *see Sandin v. Connor*, 515 U.S. 472, 482 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."). In addition, "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quotations omitted).

In determining whether to grant a preliminary injunction, a court considers: "(1) the probability of the movant's success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of the preliminary injunction is in the public interest." *Emerson Elec.*

6

*Co. v. Rogers*, 418 F.3d 841, 844 (8th Cir. 2005) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). In addition, "an injunction cannot issue if there is no chance of success on the merits . . ." *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005). "A preliminary injunction is an extraordinary remedy . . . and the burden of establishing the propriety of an injunction is on the movant." *Watkins*, 346 F.3d at 844 (citations omitted).

## II. Analysis

Plaintiff requests that Defendants be enjoined to "reinstate [his] Mental Health Treatment Plan." (Pl.'s Mot.; *see also* Pl.'s Aff. ¶ 8.) This Court concludes that such an injunction should not be issued because Plaintiff has not demonstrated that any of the *Dataphase* factors support granting his requested injunctive relief.

### A. Likelihood of Success on the Merits

Plaintiff has not demonstrated likelihood that he will succeed on the merits. Although Plaintiff has made conclusory allegations in his affidavit supporting his motion that the conditions of his confinement deprive him of basic mental-health needs, he has provided no legal support or evidence to support any likelihood of success on any of his claims asserted in his Amended Complaint against

7

Defendants.[3]  *See Watkins Inc.*, 346 F.3d at 844 ("The party seeking injunctive

relief bears the burden of proving all the *Dataphase* factors.").  Specifically, and

relevant here, he has not demonstrated that Defendants acted with subjective

deliberate indifference, that is, that they were aware of a substantial risk of

serious harm to Plaintiff but disregarded that risk.  *See Farmer v. Brennan*, 511

U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth

Amendment for denying an inmate humane conditions of confinement unless the

official knows of and disregards an excessive risk to inmate health or safety[.]");

*see also Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006) (stating that in

order to prevail on a claim of constitutionally inadequate medical care, an inmate

must demonstrate that "the prison officials actually knew of but deliberately

disregarded [the inmate's serious medical] needs").  "As long as this threshold is

not crossed, inmates have no constitutional right to receive a particular or

requested course of treatment, and prison doctors remain free to exercise their

independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th

---

[3]     In his Amended Complaint, Plaintiff alleges violations of the First, Eighth,
and Fourteenth Amendments to the Constitution based on various conditions of
his confinement.  Only certain of his Eighth Amendment claims relate to the relief
he is requesting in his motion for preliminary injunction.  Because Plaintiff has not
provided legal support or evidence to support any likelihood of success on any of
his other First, Eighth, and Fourteenth Amendment claims in his motion or
supporting papers, he has not met his burden, *see Watkins Inc.*, 346 F.3d at 844,
and the Court does not address the merits of these other claims here.

Cir. 1997). "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quotation omitted); *see also Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (stating that prisoners "do not have a constitutional right to any particular type of treatment[,]" and "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment").

Here, Plaintiff's complaint is with Defendants' decision to follow a mental-health-treatment plan for him that did not involve another opportunity to reside in the general population as a step toward transferring him to another facility to obtain sex-offender treatment. Instead, Defendants have chosen to treat Plaintiff's mental-health conditions through therapy and medication, and continued confinement in the segregated units. And the evidence submitted by Defendants shows that Plaintiff's mental health is improving and his aberrant behavior has diminished. Safety issues aside, this Court concludes that based on the record before it, Plaintiff's arguments regarding the reinstatement of the 2007 mental-health-treatment plan amount to a disagreement over a treatment decision, which is not enough to establish deliberate disregard of serious medical needs. *See Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (finding that the disagreement did not establish deliberate indifference); *Jolly*, 205 F.3d at 1096; *see also Moots v. Lombardi*, 453 F.3d 1020, 1022-23 (8th Cir.

9

2006) (concluding that the prison officials' failure to follow a treatment professional's recommendations did not violate the Eighth Amendment when there were non-medical reasons, including safety concerns, for their decision and when the treatment professional made the recommendation contingent on compliance with facility custody and classification rules); *Dudley v. Mobley*, No. 5:02CV00097JFF, 2006 WL 666710, at *3 (E.D. Ark. Mar. 15, 2006) (concluding that where an inmate had access to regular individualized therapy sessions to address his mental-health problems, failure to place him in a group rehabilitation program did not violate the Eighth Amendment). Therefore, Plaintiff has not shown that he is likely to succeed on the merits of his claim that Defendants' treatment for his mental-health needs violates the Eighth Amendment.

## B.    Irreparable Harm

Plaintiff has also not shown that there is a threat of irreparable harm to him if the 2007 treatment plan is not reinstated. In order for an injunction to issue, Plaintiff must show a cognizable danger of harm. *See Goff*, 60 F.3d at 521. Danger in this context means more than a possibility of harm. *Id.*; *see also Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 961 (8th Cir. 1995) (finding irreparable harm and granting injunction that required insurer to provide a commonly accepted treatment for cancer when the plaintiff faced missing perhaps her only opportunity for the treatment and given the "grave and

10

progressive nature" of her illness). "[I]njunctive relief is not appropriate where the threat of harm is merely speculative." *Cargill, Inc. v. Hartford Accident & Indem. Co.*, 531 F. Supp. 710, 715 (D. Minn. 1982). If the moving party fails to present evidence of irreparable harm, then it is proper to deny a motion for injunctive relief. *Watkins Inc.*, 346 F.3d at 844.

Plaintiff provided an affidavit in support of his motion in which he states that he suffers from "Major Depressive Disorder, visual and auditory hallucinations, problems with disorientation and confusional [sic] states, problems with nightmares and insomnia, anxiety, giddiness, jitteriness and restlessness, extra pyramidal symptoms, including abnormal involuntary movement, [and] post tramatic [sic] stress disorder[.]" (Pl.'s Aff. ¶ 2.) He contends that because of the conditions of his confinement (i.e., isolation and reduced stimulation), he is being deprived of basic mental-health needs, and therefore his previous mental-health-treatment plan should be reinstated so that his isolation would be decreased and his stimulation would be increased. Plaintiff, however, has not provided any information demonstrating what physical or psychological injuries are resulting from the denial to reinstate his previous mental-health treatment-plan. Nor has Plaintiff demonstrated the irreparable nature of any injuries or that such irreparable harm will occur in the immediate future, despite the fact that no harm has occurred during the previous two years when plaintiff was not being treated under the 2007 plan. In other words, Plaintiff has not demonstrated that his

11

current inability to participate in sex-offender treatment is having a harmful effect on his mental health. On the other hand, Defendants have provided evidence to the contrary, showing that Plaintiff's depression has been adequately managed using the therapies and medications available to him at MCF-OPH. (*See* Puffer Aff. ¶ 15.) While it may be disappointing to Plaintiff that he no longer is provided with certain privileges that the general-population inmates have, and that he no longer is on a treatment plan that could eventually allow him to participate in a sex-offender treatment program, there is no indication that Plaintiff's current state of mind or his prison conditions pose a cognizable danger or harm while this case is pending. Without proof of irreparable harm, it is appropriate for this Court to recommend denying Plaintiff's motion for preliminary injunction.

### C. Balance of Hardships

As to the balance between the alleged harm to Plaintiff and the injury that granting the injunction will inflict on other parties, as stated above, Plaintiff has generally alleged that he is being deprived of basic mental-health needs, however, he has not explained what specific harms would result from the denial to reinstate his previous mental-health treatment-plan. Defendants, on the other hand, argue that Plaintiff has not shown that he is capable of residing in the general prison population without causing problems for staff and other inmates and assert that if he is released to a lower custody facility to complete sex-

offender treatment, staff and inmates could be endangered.  The Court finds that the balance weighs against granting the injunction because Plaintiff's prior disciplinary reports and Plaintiff's acknowledgement that he has had discipline problems in the past for sexual misconduct indicate that staff and inmates could be endangered if he returns to the general population.  The MCF-OPH administration should not be prevented from taking appropriate steps to keep its facility and staff safe.

### D.    Public Interest

Finally, decisions regarding where to house individual inmates have a direct impact on the safety and security of Minnesota Department of Corrections facilities, and Department of Corrections officials are in the best position to make those decisions.  Although the public does have an interest in rehabilitating prisoners prior to release, the public has a stronger, more immediate interest in allowing the MCF-OPH staff to continue to implement restrictions necessary to the safety and security of the institution.

In sum, each of the *Dataphase* factors weighs against granting Plaintiff a preliminary injunction.  Thus, this Court recommends that his motion be denied.

### RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Preliminary Injunction (Doc. No. 13), be

**DENIED**.

Date:  October 28, 2009

_s/ Jeffrey J. Keyes_
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**November 12, 2009**, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within ten days after service thereof.  All briefs filed under
this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.